# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
### ST. JOSEPH DIVISION

| | | |
|---|---|---|
| ROGER BLAKLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:14-cv-06125-NKL |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff Roger Blakley seeks review of the Administrative Law Judge's decision denying his application for Social Security Disability Insurance benefits. For the following reasons, the decision of the Administrative Law Judge ("ALJ") is reversed, and the case is remanded for reconsideration.

## I.    Background

### A.  Medical History

Blakley began receiving treatment for pain in his feet and numbness in his toes and fingers in April 2010. At the time he sought treatment he had been experiencing problems for over a year and stated that he had been unable to work due to the pain. He was prescribed Neurontin; the dose was increased a month later.

Blakley has also struggled with alcoholism. Before October 2011 he was seen multiple times in the emergency room for intoxication, paranoia, acute psychosis, and

suicidal ideation. In November 2011 Blakley began to seek regular medical treatment from his primary care physician. He reported that he had not had a drink in a month. He continued to take Neurontin, but stated that it made him drowsy.

In February 2012 Blakley reported worsening joint aches and pains and was prescribed Mobic. He also stated that he was experiencing continued hallucinations that caused him to act in unacceptable ways and prevented him from living with his relatives for any extended duration. In April he continued to report joint pains in his knees and elbows. His dose of Neurontin was increased. An x-ray was taken of his left knee in May that showed degenerative changes. In June, Blakley reported no improvement in his symptoms on the increased dosage of Neurontin. In August, Blakley was examined by Dr. Michael DePriest and reported numbness, tingling, weakness, and locking of the fingers in his upper extremities. A nerve conduction study showed bilateral cubital and Guyon's canal syndromes.

That same month Blakley began receiving mental health treatment. He reported difficulty with memory, depressed mood, anhedonia, crying spells, poor concentration, fatigue, excessive guilt, change in appetite, rumination, unrealistic worry, seeing demons and talking to the devil, trauma, reliving, avoidance, and hypervigilance. He was diagnosed with psychotic disorder. He was prescribed Haldol and Celexa, though the Celexa made him sleepy and the Haldol did not improve Blakley's hallucinations. In October he was switched to Risperdal. He reported that he had not had any alcohol in a year.

2

In November, surgery was performed on his right arm. After surgery Blakley stated that he was unhappy with the surgery as his arm was not as strong as it had been before the operation and he continued to experience tingling and numbness.

In January 2013, Blakley reported that his hallucinations had worsened. He only used his Risperdal intermittently. He stated that he was experiencing a depressed mood and anhedonia. His doctor noted that he was anxious and paranoid with tangential thought process. In May he reported that his irritability had worsened and his hallucinations were still present despite continuing sobriety.

## B. Administrative Hearing and ALJ Decision

Blakley testified at an administrative hearing on June 27, 2013. He stated that he was unable to work due to his hallucinations, neuropathy, knee damage and left eye blindness. He explained that he gets daily hallucinations that are intermittent. He has these hallucinations even when on medications. Blakley also explained that he has constant pain in his feet while walking and has difficulty gripping a coffee cup with his right hand.

The ALJ denied Blakley's request for disability benefits, concluding that he had the Residual Functional Capacity ("RFC") to engage in substantial gainful activity. The ALJ found that despite Blakley's severe impairments of blindness in the left eye, chest pains, peripheral vascular disease, peripheral neuropathy in his feet, legs and right hand, and schizophrenia, he retained the following RFC:

> [T]o perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant is limited to occasionally climbing ramps or stairs, stooping, kneeling, crouching, crawling,

3

balancing, and bending, and never climbing ladders, ropes, or scaffolds. In addition, the claimant is limited to frequent, but not constant fine manipulation of the right hand. Moreover, the claimant should avoid all exposure cold temperature extremes, toxic fumes, unprotected heights, and hazardous machinery. Additionally, the claimant can perform no occupations that require fine detailed work. Furthermore, the claimant is limited to simple, routine work in a low stress setting defined as only occasional decision making required, only occasional changes in the work setting, and only occasional judgment required on the job.

[Tr. 19].

In his opinion, the ALJ also considered whether Blakley's impairments met the Listings and the effect of his alcohol abuse on his ability to sustain substantial gainful activity. The ALJ concluded that his substance abuse disorder meets Listing 12.02 ("Organic Mental Disorders: Psychological or behavioral abnormalities associated with a dysfunction of the brain. History and physical examination or laboratory tests demonstrate the presence of a specific organic factor judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities.") and Listing 12.09 ("Substance Addiction Disorders: Behavioral changes or physical changes associated with the regular use of substances that affect the central nervous system."). However, the ALJ concluded that if Blakley stopped using alcohol, his remaining limitations would not satisfy any of the Listings.

The ALJ noted that without alcohol, Blakley would have moderate limitations with social interactions because "although the claimant reported he had been fired from a job because of problems getting along with other people, he noted he was fired because he 'couldn't do the job right.'" [Tr. 17]. Blakley also reported that he was able to go out

alone by driving, walking, and using public transportation, and medical records noted that he was cooperative and displayed fair eye contact. The ALJ concluded that Blakley would have mild difficulties with regard to concentration, persistence, or pace as "examinations continued to note intact memory, average fund of knowledge, appropriate attention, tight thought processes, logical associations, and fair insight and judgment." *Id.* at 18.

In determining that Blakley was capable of maintaining substantial gainful activity, the ALJ gave substantial weight to the opinion of Dr. Steven F. Bowen, a board certified medical examiner in ophthalmology. Dr. Bowen was neither a treating nor examining physician. Dr. Bowen opined that Blakley had limited ability to perform fine detailed work and should never work with heavy machinery, moving equipment, or on ladders or off the ground. He also noted that Blakley should wear safety goggles at all times and should not be exposed to toxic fumes or chemicals. A vocational expert testified at the administrative hearing that under the ALJ's RFC, Blakley would be able to perform such jobs as a router mail clerk, burr grinder, and crimper.

## II.    Standard of Review

"[R]eview of the Secretary's decision [is limited] to a determination of whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision 'simply because some evidence may support the opposite conclusion.'" *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Substantial evidence is "more than a mere scintilla" of

Case 5:14-cv-06125-NKL   Document 15   Filed 08/17/15   Page 5 of 11

evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

## III. Discussion

Blakley argues that the ALJ erred by (1) failing to support the finding that Blakley's substance abuse was material to the finding of disability and (2) failing to provide a proper RFC as he did not cite any medical evidence in support of his conclusion. The Court concludes that the ALJ's decision is unsupported by substantial evidence of the record.

Much of Blakley's claim turns on whether he would be disabled absent alcoholism. *See Brueggemann v. Barnhart*, 348 F.3d 689, 693 (8th Cir. 2003) ("[I]f alcohol or drug abuse comprises a contributing factor material to the determination of disability, the claimant's application must be denied."). "If the ALJ is unable to determine whether substance use disorders are a contributing factor material to the claimant's otherwise-acknowledged disability, the claimant's burden has been met and an award of benefits must follow." *Id.*

The ALJ concluded that in the absence of alcohol abuse, Blakley would be able to perform simple, routine work in a low stress setting. However, in concluding that "the objective findings in this case provide strong support for the claimant's allegations of disabling symptoms and limitations during periods of substance abuse," the ALJ cited two medical records[1] that indicated that Blakley continued to have significant

---

[1] Blakley notes that one of the 2012 records does contain a note that Blakley continued to use alcohol during the visit. However, this note appears to be a carryover from an April

psychological problems, including hallucinations, during periods of reported sobriety. [Tr. 15-16]. Given the ALJ's citation to evidence from periods of sobriety to conclude that Blakley was disabled and met a listing during periods of alcohol abuse, the Court cannot conclude that substantial evidence of the record supports the ALJ's decision. *See Pettit v. Apfel*, 218 F.3d 901, 903-04 (8th Cir. 2000) (remanding the case due to the ALJ's conclusion that alcohol abuse was material to the claimant's disability, despite finding that the claimant met the qualifications of a Listing during a period of sobriety).

Defendant argues that Blakley's treating medical providers appeared to suspect that alcohol played a role in Blakley's 2012 symptoms. In support of the assertion, Defendant cites a notation in one of the medical records that states "Pt also has a long standing history of ETOH abuse with several years of sobriety off and one. He is asked specifically if his hallucinations are alcohol induced, but he can not answer the question directly." [Tr. 384]. While this notation may suggest that the treatment provider suspected that alcohol played a role in his symptoms, the treatment notes also state that his comments were "disjointed and he can barely finish a sentence." *Id.* It is unclear from the treatment notes whether the treatment provider believed alcohol played a role in his continuing symptoms or not. *See Brueggemann v. Barnhart*, 348 F.3d 689, 693 (8th Cir. 2003) (noting that where it is unclear whether alcohol influences the claimant's

_____

2010 record that contains the same notation: "Alcohol: Alcohol use had a beer this am to fight the pain, drinks every now and then." While the 2010 record contains additional comments regarding this note, no such additional notes appear in the 2012 record other than a statement that hallucinations and alcohol "had him admitted to the mental ward *in the past*." [R. at 384 (emphasis added)]. The Court concludes that the 2012 notation regarding alcohol use was likely a carryover, and that Blakley reported maintaining sobriety at all times relevant to the 2012 visit.

Case 5:14-cv-06125-NKL   Document 15   Filed 08/17/15   Page 7 of 11

functional capacity, the claimant is entitled to benefits). There is no objective evidence to indicate that Blakley was abusing alcohol during these 2012 visits and no medical provider opined about whether he was using alcohol or the effects of alcohol use on his ability to maintain employment.

Defendant also notes that medical records from later in 2012 reveal that he was alert and oriented with average intellect and intact memory, and that treatment providers noted that he was "doing well" with fair cooperation, normal speech, fair eye contact, appropriate appearance, euthymic mood, and a tight thought process. [Tr. 347-50, 380-82]. However, medical records from the months immediately following these notes show Blakley's functioning declining. [Tr. 344-46]. Blakley's improved demeanor and diminished psychological symptoms on a few occasions is not substantial evidence of his ability to work given the repeated notations in the record that he continued to struggle with hallucinations, anxiety, and other potentially debilitating symptoms. *Porter v. Colvin*, 2015 WL 3843268, at *8 (W.D. Mo. June 22, 2015). Moreover, even though these later records note at points that Blakley displayed intact memory, average fund of knowledge, good cooperation, fair eye contact, normal speech, and fair insight and judgment, nothing in the record suggests that these abilities made Blakley capable of maintaining substantial gainful employment given his other symptoms.

Given the ambiguity in the record regarding whether Blakley was using alcohol in 2012 and how extensively Blakley was affected by his psychological symptoms in the absence of alcohol, the ALJ had an obligation to expand the record and acquire additional medical opinions before denying Blakley's disability claim. The record contains medical

8

opinions from only two doctors: Dr. Keith Allen, a non-examining state agency doctor, and Dr. Bowen, a non-examining ophthalmologist. The ALJ gave little weight to Dr. Allen's opinion as he did not have access to the medical records submitted in connection with the administrative hearing. [Tr. 22]. However, the ALJ gave substantial weight to Dr. Bowen's opinion. Dr. Bowen specifically noted that he was not able to opine about whether Blakley's symptoms met a listing because he is not a psychiatrist. The record contains no medical opinions regarding the materiality of Blakley's alcohol abuse or ability to maintain substantial gainful activity in the absence of alcohol use.

While the record contains evidence to support the ALJ's conclusions regarding Blakley's physical limitations, the record contains no substantial evidence to support the ALJ's conclusion that Blakley is capable of "simple, routine work in a low stress setting." [Tr. 19]. Blakley has no work history to support this conclusion and the record suggests that his activities of daily living are limited by his psychological symptoms.

Defendant argues where there are no medical opinions that directly support a plaintiff's alleged limitations, the ALJ is not required to seek one for him. The Code of Federal Regulations provides that "[i]f any of the evidence in your case record, including any medical opinion(s), is inconsistent, we will weigh the relevant evidence and see whether we can determine whether you are disabled based on the evidence we have." 20 C.F.R. § 404.1520b(b). According to Defendant, this provision gives the ALJ discretion to decide when supplementation of the record is necessary. *Citing Peterson v. Colvin*, 2013 WL 6237868, at *4 (W.D. Mo. Dec. 3, 2013); *see also* 20 C.F.R. § 404.1520b(c).

9

While the ALJ is not required to rely on specific medical opinions in assessing a claimant's RFC, and the ALJ does not in all circumstances need to acquire additional medical opinions to evaluate a record containing conflicting information, in this instance the record was insufficient for the ALJ to make a determination supported by substantial evidence, and the ALJ was therefore required to seek additional medical evidence prior to denying Blakley's disability request. *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000) ("[T]here is no *medical* evidence about how Nevland's impairments affect his ability to function now. . . . In our opinion, this does not satisfy the ALJ's duty to fully and fairly develop the record."). The discretionary provisions in 20 C.F.R. § 404.1520b do not mean that the ALJ never has an obligation to develop the record where ambiguities arise regarding a claimant's capacity. *See Leath v. Colvin*, 2013 WL 3215215, at *2 (W.D. Mo. June 24, 2013); *Taylor v. Astrue*, 2012 WL 6953117, at *11 (E.D. Mo. Nov. 9, 2012). Given the ambiguity of the record in this case, the ALJ should have developed the record to determine the effect of Blakley's ongoing hallucinations and other psychological symptoms on his ability to work.

## IV. Conclusion

For the reasons set forth above, the ALJ's decision is reversed, and the case is remanded for reconsideration. On remand, the ALJ should develop the record by obtaining medical opinions regarding the effect of Blakley's alcohol abuse on his psychological symptoms and the effect of Blakley's ongoing hallucinations and other psychological ailments on his ability to maintain substantial gainful activity. The ALJ

should also reevaluate the existing evidence of the record to determine whether Blakley's symptoms abated during periods of sobriety.

/s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  August 17, 2015
Jefferson City, Missouri